J-S41013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
WARREN DARNELL MATTHEWS :
:
Appellant : No. 125 MDA 2020

Appeal from the Judgment of Sentence Entered November 25, 2019,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0001519-2019.

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 01, 2020**

Warren Darnell Matthews appeals from the judgment of sentence imposed following his conviction for three counts of driving under the influence ("DUI") controlled substances, and one count of general lighting requirements.[1]  We affirm.

The relevant factual and procedural history can be summarized as follows.  In the early morning hours of October 7, 2018, Trooper David Petrosky was on routine patrol when he began to follow a black Porsche SUV. While following the Porsche, other state troopers passed Trooper Petrosky's police cruiser and advised him that the driver's side headlight on the Porsche

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 3802(d)(1)(i), (iii), (2), 4303(a).

was out. Trooper Petrosky continued to follow the Porsche and observed it touch both sides of the center dividing line and the fog line on the right side of the road multiple times. Trooper Petrosky activated his lights and sirens, and initiated a traffic stop. As he approached the Porsche, Trooper Petrosky detected the odor of marijuana emanating from the vehicle and noticed that the driver, Matthews, had ashes on his shirt. Trooper Petrosky began to converse with Matthews, who indicated that he had smoked marijuana approximately thirty minutes prior to the stop. Trooper Petrosky requested that Matthews step out of his vehicle to further examine him. The trooper noticed that Matthews had red conjunctiva, a green tongue with raised taste buds, and the odor of marijuana was emanating from his person.

Trooper Petrosky performed two Advanced Roadside Impairment Detention Enforcement ("ARIDE") exercises on Matthews. He first performed the lack-of-convergence test in which he noticed Matthews' eyes failed to converge. He also performed the Modified Romberg test, in which Matthews' estimation of thirty seconds was significantly off and Trooper Petrosky observed eyelid tremors. Matthews informed the trooper that he had no medical conditions with his eyes that would impede his ability to perform the tests.

Trooper Petrosky placed Matthews under arrest. He then searched the Porsche and found suspected marijuana, a partially burnt marijuana cigar, and an unopened Dutch Masters cigar. Matthews was taken to central booking

where he was read the DL-26(b) (implied consent) form and consented to a blood draw. The blood was sent to a lab for analysis. The parties stipulated to the accuracy of the blood test results, which showed Matthews had THC (active marijuana metabolite) in his system.

Matthews was charged with three counts of DUI (Schedule I controlled substance, metabolite of a controlled substance-Schedule I, and under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive), possession of a small amount of marijuana, possession of drug paraphernalia, driving while operating privilege is suspended or revoked, driving on roadways laned for traffic, and general lighting requirements (no headlight).[2] The matter proceeded to a non-jury trial in October 2019. At the conclusion of trial, the trial court found Matthews guilty of the three counts of DUI and general lighting requirements.

On November 25, 2019, the trial court sentenced Matthews to six months of county immediate punishment, the first three days of which were to be served on house arrest and the first ten days to be served with an alcohol monitor, subject to random drug testing. The court also imposed a $1,000 fine and assessed the costs of prosecution. Matthews filed post-sentence

---

[2] The Commonwealth withdrew the charge of possession of drug paraphernalia. The trial court found Matthews not guilty of the remaining charges.

motions for a new trial and stay of sentence/bail pending appeal.[3] On December 16, 2019, the trial court denied Matthews' motion for a new trial, but ordered that Matthews' original bail be reinstated during the pendency of his direct appeal. On January 14, 2020, Matthews filed a timely notice of appeal. Both Matthews and the trial court complied with Pa.R.A.P. 1925.

Matthews raises one issue for our review: "Whether the trial court erred in denying . . . Matthews' challenge to the weight of the evidence where the Commonwealth might have shown ingestion of marijuana, but failed to prove actual impairment in light of . . . Matthews' driving, coherence, and cooperation." Matthews' Brief at 4.

Matthews challenges the weight of the evidence supporting his conviction for DUI under 75 Pa.C.S.A. § 3802(d)(2).[4] The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a

---

[3] In his motion for new trial, Matthews challenged the weight and sufficiency of the evidence supporting the verdict.
[4] Matthews does not challenge his other DUI convictions.

juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted). In evaluating the trial court's exercise of discretion, we are guided by the following principles.

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Widmer*, 44 A.2d at 753.

This Court may not substitute its judgment for that of the fact-finder as to credibility issues or the weight to be given to evidence. *Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa. Super. 2016). These standards apply even when the trial judge rendered the verdict at issue as the finder of fact. *See*, *e.g.*, *Commonwealth v. Konias*, 136 A.3d 1014, 1023 (Pa. Super. 2016) (applying the above standards to a weight challenge following a bench trial)

The Vehicle Code provides, in relevant part, as follows: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances . . . [t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(d)(2).

Matthews claims that a conviction of DUI under section 3802(d)(2) requires a showing of substantial impairment of "the normal mental and physical faculties required to safely operate [a] vehicle." *Commonwealth v.*

*Palmer*, 751 A.2d 223, 228 (Pa. Super. 2000) (holding that substantial impairment is a "diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions"). Matthews asserts that, while he admitted to smoking marijuana and the lab results confirmed the presence of THC in his system, no evidence was offered regarding what the presence of those substances or their levels might indicate. Matthews maintains that a DUI based on general drug impairment requires more than mere ingestion, as culpability based solely on marijuana consumption is addressed by other DUI statute subsections.

While Matthews concedes that most studies show marijuana can impair driving, he claims that the impairment appears to be more akin to driving with a blood-alcohol level between 0.01 and 0.05, which is legal in all states. Matthews also argues that marijuana's effect on a particular person is difficult to measure because marijuana metabolizes at different rates among different people, and the way it affects a person depends on several subjective factors, including frequency of use, method of ingestion, amount ingested, and time of last use. Matthews claims that, unlike alcohol impairment, which can be reliably gauged by an individual's blood-alcohol concentration, the amount of THC present in the blood is not indicative of the level of THC found in the brain, which is where the impairment of psychomotor skills and other necessary functions required to safely drive would be impacted.

Matthews argues that the weight of the evidence shows that the presence of marijuana in his system did not impair his driving. He points out that he did not speed or engage in any erratic driving, and the trial court acquitted him of the moving violation charge. Matthews asserts that he was coherent and cooperative with the trooper when pulled over, and there was no evidence that his speech was slurred or his reactions were slow. Matthews contends that the two ARIDE examinations conducted by Trooper Petrosky are a mere subset of typical twelve steps of the standardized Drug Recognition Expert protocol. Matthews argues that the trooper did not perform any of Standard Field Sobriety Tests ("SFSTs") that police normally use to determine lack of coordination and concentration associated with intoxication. Matthews claims that Trooper Petrosky was not a certified drug recognition expert ("DRE") and thus could not testify about what physical signs Matthews exhibited during the examinations, and what they could potentially could indicate. Matthews further argues that Trooper Petrosky could not recall if Matthews had vision issues or needed glasses, which would have interfered with his performance on the tests. Matthews contends that Trooper Petrosky's belief that Matthews was impaired should be given less weight because the trooper was not an expert and made his determination based on limited and incomplete information. For these reasons, Matthews argues that the trial court abused its discretion in denying his challenge to the weight of the evidence.

The trial court considered Matthews' weight challenge and determined that the verdict was not against the weight of the evidence. It reasoned:

> Considering the presence of THC in [Matthews'] system; his own admission that he smoked marijuana half an hour before driving; his failure in his performance of the field of sobriety tests; and Trooper Petrosky's observation regarding the odor of marijuana, [Matthews'] appearance, as well as the presence of suspected marijuana in [Matthews'] car, this [c]ourt finds that the verdict for a conviction of driving under the influence of controlled substance . . . under 75 P[a.C.S.A.] § 3802(d)(2) was amply supported by competent evidence. [Matthews] has failed to show that the evidence provided at trial was so tenuous, vague and uncertain that the verdict shocks the conscience of the court . . ..

Trial Court Opinion, 4/24/20, at 11-12.

As discussed above, we give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is not against the weight of the evidence. In this matter, we discern no abuse of discretion by the trial court in arriving at its conclusion that the verdict of guilt did not shock the conscience. In reaching its conclusion, the trial court relied on numerous pieces of credible and uncontested evidence that cannot be dismissed as tenuous, vague, or uncertain; namely, Matthews' admission that he had smoked marijuana thirty minutes prior to the traffic stop, the smell of marijuana in his car and on his person, the appearance of ashes on his shirt, two failed field drug recognition ARIDE tests, physical indicators of intoxication observed by Trooper Petrosky, the marijuana and half burnt marijuana cigar found in his car, and lab results indicating THC in his blood. Given the evidence of record supporting the

verdict, we cannot conclude that the judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill will.

Matthews' reliance under **Palmer** is also unavailing. **Palmer** did not involve a challenge to the weight of the evidence. Nor did **Palmer** involve a conviction under 75 Pa.C.S.A. § 3802(d)(2) for an individual under the influence of marijuana. Instead, **Palmer** involved a challenge to the sufficiency of the evidence supporting a conviction for alcohol-related DUI under 75 Pa.C.S.A. § 3731(a).

In any event, the **Palmer** Court specifically held that

> Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

**Palmer**, 751 A.2d at 228. Thus, even if Matthews was not driving erratically or unsafely, **Palmer** undermines his argument that the verdict was contrary to the weight of the evidence because he failed two drug recognition ARIDE tests.

Further, while Trooper Petrosky may not have been trained as a certified drug recognition expert, he was nevertheless competent to closely observe Matthews' behavior, demeanor, and inability to perform drug recognition ARIDE tests, all of which led him to request laboratory tests for the detection of controlled substances in Matthews' blood. **See Commonwealth v. Griffith**, 32 A.3d 1231, 1240 (Pa. 2011) (holding that the evidence was

sufficient to establish a conviction under section 3802(d)(2)). Matthews stipulated at trial that the laboratory tests did, in fact, detect THC in Matthews' blood, as the officer suspected.

Moreover, our Supreme court has declined to impose a requirement for expert testimony to establish a conviction under section 3802(d)(2). *See Griffith*, 332 A.3d at 1238-39. Indeed, in interpreting section 3802(d)(2), the Court specifically ruled that "[t]his provision by its plain text does not require that a drug be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." *Id*. at 1239. Thus, the Commonwealth was not required to present an expert to interpret or explain the lab results, or their bearing upon Matthews' level of impairment.

Finally, the fact that the court, sitting as fact-finder, acquitted Matthews of a moving violation entitles him to no relief. Pennsylvania courts have long recognized that acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the fact-finder was not convinced of a defendant's guilt. *Moore*, 103 A.3d at 1246. Rather, it has been the understanding of the courts of this Commonwealth that an acquittal may merely show lenity on the fact-finders' behalf. *Id*. Accordingly, Matthews' weight challenge merits no relief.

Judgment of sentence affirmed.

Judge McLaughlin joins the memorandum.

- 11 -

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2020